**THE MCDANIEL LAW FIRM, PC**
54 Main Street
Hackensack, New Jersey 07601
(201) 845-3232
(201) 845-3777 (Facsimile)
*Attorneys for Plaintiff Baseprotect USA, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| BASEPROTECT USA, INC.,<br><br>        Plaintiff,<br><br>   v.<br><br>SWARM #06159, a joint enterprise, and JOHN DOES 1-NA, such persons being presently unknown participants and members of the joint enterprise,<br><br>       Defendants. | Civ. Action No. 2:11-cv-7288(SDW)(MCA) |

---

## MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION AND IN SUPPORT OF BASEPROTECT'S CROSS-MOTION FOR A PRELIMINARY INJUNCTION

---

On the brief:
Jay R. McDaniel, Esq.
Bonnie C. Park, Esq.

Baseprotect USA, Inc. ("Baseprotect") respectfully submits this Memorandum of Law in opposition to Defendant's motion and in support of its Cross-Application for a Preliminary Injunction enjoining the continued unlawful distribution of the copyrighted work *Weekend* by Defendant Swarm # 06159.[1]

### PRELIMINARY STATEMENT

Doe Defendant identified by IP address 24.13.138.223 ("Movant") moves to quash a subpoena issued to Comcast Communications, Inc. seeking to discover his or her name and address for the purpose of joining Movant to this action.  Baseprotect opposes the action and also moves against the Defendant Swarm # 06159, the individual Movant, and those acting in active concert for a preliminary injunction (A) to restrain and enjoin ongoing or future unlawful distribution of the pirated copy of the work the copyrighted movie *Weekend* on the Internet and (B) to preserve evidence of copyright infringement by the distributors.  In short, Movant was properly joined to this action and is subject to the personal jurisdiction of this Court.  There is no meritorious dispute that Defendants have in fact unlawfully distributed a pirated copy of *Weekend* on the Internet and that an injunction *pendente lite* is necessary to prevent irreparable harm – the continuing worldwide distribution of pirated copies of Baseprotect's copyrighted work.

Without the preliminary injunction, Baseprotect has no means to prevent Defendants from their continued worldwide distribution of *Weekend*.  The harm is immediate and irreparable, liability is clear, and the equities in favor of preventing

---

[1]    The Defendant Swarm is identified by the unique "hash" number assigned to the unique copy of the work that is being distributed, in this case 06159132D21BBC88ED40B6E51278879F2725243F.  We use the truncated hash number 06159 for ease of reference and reading.  See Compl. Exh. A.

ongoing copyright infringement are manifest. Additionally, a provision in the injunction that enjoins destruction of electronic evidence is necessary to protect Plaintiff's ability to secure evidence to which it is entitled and which is necessary to prosecute its claims for damages.

Movant's principal arguments, meanwhile, are without merit  As discussed in more detail below, Movant is one of the operators of a network that was created and operated for the express purpose of copyright infringement.  The network maintained a physical presence in this State and, in fact, distributed pirated copies of the work from those physical locations.  Movant, together with each of the other individual members and operators, is jointly and severally liable for the conduct of the network.  The central issue in this case is distribution and the means and methods used to detect the unlawful distribution.  Each of the putative defendants is not only jointly and severally liable, each of the defendants have cross-claims against the other defendants for contribution. Movant's argument that he be permitted to walk away from responsibility in the case, leaving it to the other operators of the network to make good the damages caused by the Swarm's conduct is not only unfair to Baseprotect, but deprives the other Defendants of a substantial right and imposes on those ultimately found liable the obligation to pursue contribution suits across the United States.  Common sense dictates that, at least through the conduct of discovery, a single action is proper against the Swarm Defendant and its participants.

STATEMENT OF FACTS

Baseprotect brings this action to stop Defendants from distributing on the Internet unauthorized copies (files) of the movie *Weekend* and for damages arising out of such unauthorized distribution.

Swarm 06159 and each of the "Doe" Defendants as the operators of the Swarm have engaged in the unlawful distribution of *Weekend* using Peer-to-Peer ("P2P") networks and torrent technology ("torrent") (Farris Decl. ¶¶ 17-19, 26-29).  As discussed in more detail below, members of Swarm 06159 continue to have the ability to engage in the unlawful distribution of the work. (Id. ¶ 26.)

**<u>Use of Torrent Technology</u>**

The Internet is a global computer network.  Once a creative work – sound, visual or otherwise -- is placed in digital format, that work can be replicated and distributed over the Internet an unlimited amount of times without significant degradation in picture or sound quality.  (Farris Decl. ¶ 7.)  The unlawful distribution of copyrighted sound recordings and motion pictures over the Internet frequently occur via "peer-to-peer" ("P2P") networks using a Bit Torrent Protocol ("torrent").  In this litigation, a pirated copy of the movie *Weekend* was, and continues to be, distributed in violation of the rights of Baseprotect USA, Inc. (<u>See</u> Farris Decl. ¶¶ 26-29.)

The torrent protocol creates a network of computers and Internet connections that ermit Internet users, regardless of the limited uploading and downloading capabilities of their Internet service account, to participate in transferring large amounts of data across the P2P network.  This P2P network is called a "torrent" or a "swarm."  Each user in a

torrent acts as both a file server and a network node, offering to distribute and distributing content to any user that connects to the torrent.  (Farris Decl. ¶ 9.)

A torrent is started by a "seed," the user who makes the first piratical copy and publishes it to the torrent.  The torrent software assigns this seed file a unique alpha-numeric number, known as the "hash," and breaks the file into many smaller files.  The work is distributed in the form of many small files and the hash will be used both to identify that particular file to other torrent users and to facilitate the reassembly of the entire work.  Other users, known as "peers" can then join the P2P network and connect to the seed file in order to download the work to their own computers.  As the file is copied to each new user's computer, it is also offered to other members of the torrent.  Each participant in the torrent makes an unauthorized copy of the work and, more importantly, becomes a worldwide distributor of the work to any other user connected to the torrent (Farris Decl. ¶¶ 10-12.)

The individual that distributes a work on a torrent must have taken several affirmative steps to joint the torrent, to start receiving a copy of the file, and to and begin distribution.  First, the individual must install a torrent client, which is a program installed on an individual computer to manage torrent distribution.  Second, the user must locate a swarm that is distributing the work.  Most often, torrent users find swarms through "torrent trackers," web sites that identify and advertise torrents from which content can be downloaded.  Third, the torrent member must initiate the download.  Thereafter, the torrent will find the missing parts of the file (searching across all the Swarm users then connected), download the missing parts, and reassemble the final work. (Farris Decl. ¶¶ 12-14.)

Because torrent technology uses piecemeal distribution, the network of users distributing the same content, in this case a movie, it is generally referred to as a "swarm." The swarm is a *discrete* network that distributes identical content virally across the Internet. Within hours, a torrent can distribute content to tens or even hundreds of thousands of users because the torrent's ability to expand to encompass new users, new file servers and new points of network communications has no technical limits. (Farris Decl. ¶13.)

Baseprotect monitored the illegal distribution of *Weekend*, including distribution across torrent networks. Baseprotect identified Swarm # 06159 as a discrete network engaged in the distribution of an identical copy of *Weekend*. Baseprotect verified that the Swarm was engaged in distributing a copy of the work by downloading and manually inspecting a copy from the Swarm. (Farris Decl. ¶¶ 16-19.)

Having identified the Swarm and confirmed the authenticity of the work, Baseprotect has monitored the Swarm and identified individual operators of the Swarm by IP address and the date and time on which the work was being distributed. In addition to identifying the work, Baseprotect confirmed that work was <u>in fact being distributed</u> from that specific IP address by connecting to the Swarm user's computer and downloading a portion of the file. In the process, Baseprotect records the specific torrent program used by the Swarm member; the identity of the file offered for distribution; the size of the file offered for distribution, that the file was, in fact, available for download, the GUID code (a unique machine-specific code incorporating information about the software used, IP address and network card used to communicate with the network) and in most cases the portal number used by the computer to connect to the torrent. The

information collected by Baseprotect is conclusive proof of the fact of unauthorized distribution from a computer connected to Swarm from a particular IP address. (Farris Decl. ¶¶ 23-25.)

Baseprotect retained this information in its databases and identified the ISP that provided the Internet service from which the work was distributed by each of the Doe Defendants.  The technology and procedures utilized by Baseprotect are well-accepted as accurate and reliable within the digital rights enforcement industry.  (Farris Decl. ¶ 21.)

Baseprotect identified in the process that the Swarm had a physical within this State with file servers in Absecon, Jersey City, Pompton Plains and Somerville operating between October 10, 2011 and November 11, 2001.  (John Doe Nos. 8, 9, 12 and 39.) Movant is a resident of Chicago and was observed distributing *Weekend* on October 28, 2011 at 7:36 p.m. UTC.  Movant's IP address was recorded and the fact that the work was being distributed was confirmed by downloading a sample from the computer connected to that Internet address.

## LEGAL ARGUMENT

This motion seeks relief routinely granted in copyright cases, i.e., a preliminary injunction that prohibits continued worldwide distribution of a copyrighted work in direct competition with the copyright holder while the infringement claims are litigated on their merits. Each Defendant has been documented as participating in the unauthorized distribution of a pirated copy of the work through computer equipment and/or network equipment in their possession, custody or control.[2] There is no cognizable interest in Defendants continuing such behavior.

As discussed in more detail below, not only does Baseprotect meet the standards for the imposition of a preliminary injunction, but courts have not hesitated to enjoin peer-to-peer distribution in violation of the rights of copyright holders.

## I.     This Court has jurisdiction over the Swarm and each of the Defendants.

The Defendant Swarm in this case is a network of computers and communications equipment operated and maintained by the individual Defendants. The Swarm itself meets the ordinary customary definition of an enterprise in that it is an association of individuals pursuing a common goal for profit.[3] The Swarm network is known to have

_____

[2]     As discussed in more detail below, the remedy sought is not confined, as in some other cases, to those who actively downloaded the material, but also to those persons who used or permitted others to distribute the working using equipment within their custody and control: computers, wireless routers, and Internet connection points. A copyright holder is damaged by unauthorized distribution even if the Defendant can ultimately establishes that he or she was ignorant of the offense.

[3]     While one might debate whether the conduct of an individual in avoiding the expense of buying a DVD could fairly be construed as motivated by profit, when one considers the conduct of the Defendants at the Swarm level, the contrary is true. The Swarm seeks to and does establish a distribution network that competes directly with the business authorized to distribute a popular work. The cost of establishing and

multiple connection nodes, computers and network equipment located in this State.  As discussed at length in the Farris Declaration, the Swarm is a *discrete* network distributing a particular copy of the work.  It is an entity with an ongoing existence and a single purpose – the unlawful distribution of the work.[4]

The Swarm purposefully distributed content, and did so from locations within New Jersey. The Swarm, through the individual Doe Defendants, maintained copies of the work on multiple servers in this State, and distributed the work from multiple Internet accounts located within this State.  The Swarm thus operates within the state through its ongoing contacts and based on its physical presence and method of operations is subject to jurisdiction within the State.

A well-established principle is that an Internet business that targets residents of forum state and/or knowingly conducts business with residents of the forum state via its web site is subject to personal jurisdiction.  Toys "R" Us, Inc. v. Step Two, S.A., 318 F.3d 446, 452 (3d Cir. N.J. 2003), citing Zippo Mfg. Co. v. Zippo DOT Com, Inc., 952 F. Supp. 1119 (W.D. Pa. 1997); ALS Scan v. Digital Service Consultants, Inc., 293 F.3d 707 (4th Cir. 2002).  Similarly, a court may consider other contacts as determining

---

maintaining such a distribution network, if legal, would likely run into the hundreds of thousands (or millions) of dollars.  See Capitol Records v. Thomas-Rasset, 680 F. Supp. 1045, 1059 (D. Minn. 2010)("a license to engage in Defendant's [distribution] activity would be prohibitively expensive because to obtain the license, one would have to buy the company.")  In this case, the Swarm has duplicated thousands of copies of the work.

[4]    It is a general principle that jurisdiction over a single general partner confers jurisdiction over the partnership.  See  Donatelli v. National Hockey League, 893 F. 2d 459, 466 (1st Cir. 1990), accord Miller Yacht Sales, Inc. v. Smith, 384 f. 3d 93, 95 n. 1(3d Cir. 2004).  The Swarm had a single purpose, distribution of the subject work. Although operating in the digital rather than the physical realm, it is clear that each

whether there was "purposeful availment" within a forum state.  See Toys "R" Us, supra, at 453-54.  The same principles that apply when determining jurisdiction in Internet web sites apply to a Swarm, which is functionally no different than an Internet website that permits downloading of content.  Because the Swarm distributed content to residents of this state and distributed content from residents of this State, this Court has personal jurisdiction over the Swarm.

In addition, each individual Defendant as an operator of the Swarm is subject to personal jurisdiction in any jurisdiction in which the Swarm is subject to jurisdiction. There can be little doubt that the same conduct in the physical – as opposed to the digital realm – would unquestionably be sufficient to confer jurisdiction.  The individual Defendants are jointly and severally liable for damage caused by their behavior as operators of Swarm network to distribute pirated copies of Baseprotect's work.  Bringing the individual Defendants before the court in a jurisdiction in which the Swarm operated does not offend traditional notions of fair play and is the only manner if which Baseprotect may secure relief.

Moreover, bringing all Defendants before the Court in a single action is necessary to protect the interests of the Defendants and to protect against conflicting legal and factual determinations made in dozens of filings in states around the country.[5]

---

member similarly had authority to further the purpose of the Swarm in further distributing the work.

[5]   While management by the Multi-District Litigation Panel might be an alternative means to manage this multi-party dispute, the anonymity of defendants at this point makes removal to the MDL an impossibility, as defendants have to right to be notified and object prior to removal.

## II. The Movant has failed to deny that he or she downloaded and offered for distribution the movie *Weekend* and failed to demonstrate any protectable privacy interest or undue burden.

At the outset, and most importantly, no where in the Movant's motion papers does he or she deny that the movie *Weekend* was downloaded through his or her IP address and thereafter offered for distribution. Despite moving this Court for protection of his or her identity based on privacy concerns and undue burden, the Movant does not even take the basic step of denying the allegations against him or her as stated in Baseprotect's Complaint.

The Movant's assertion that he or she has a protectable privacy interest or privilege in his or her identity is disingenuous and unsubstantiated by any relevant legal authority. In fact, the Movant has no legitimate expectation of privacy in the subscriber information that he or she voluntarily provided to the ISP. See Interscope Records v. Does 1-14, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); Sony Music Entertainment, Inc. v. Does 1-40, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("Defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission."); Arista Records, LLC v. Does No. 1, 254 F.R.D. 480, 481 (E.D.N.C. 2008). The Movant is pseudonymous, not anonymous and the ISPs can readily identify him or her. (Farris Decl. ¶ 10.) By entering into a service agreement, the Movant knowingly volunteered

personal information to the ISP.  The Movant should not be permitted to use the Internet as a shield for illegal activity.

The Movant further fails to assert an undue burden beyond being named as a Defendant in this suit.  As explained in Section I above, Baseprotect bases its Complaint on a joint enterprise theory of liability, subjecting the joint enterprise of the Swarm to jurisdiction in any forum in which the Swarm is subject to jurisdiction.  As a member of the Swarm, the Movant is subject to the jurisdiction of this Court and, thus, no undue burden can be shown.

**III.    Baseprotect satisfies the substantive requirements for this Court to grant injunctive relief.**

The Copyright Act provides that district courts are vested with the authority to grant preliminary injunctions in cases arising thereunder.  Specifically, 17 U.S.C. 502(a) states:

> Any court having jurisdiction of a civil action arising under this title may, subject to the provisions of section 1498 of title 28,[6] grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright.

Baseprotect satisfies the substantive standards for the issuance of a temporary restraining order.  Courts apply a four-factor test in assessing whether preliminary injunctive relief is warranted: (1) whether the Plaintiff likely will be irreparably harmed if the injunction does not issue; (2) whether the threatened injury to the Plaintiff outweighs

---

[6]    The provision mentioned in this statute, 28 U.S.C. 1498, is inapplicable to this matter, as that provision involves the use of copyright and patents by the United States government.

the threatened harm the injunction may inflict on the Defendant; (3) whether the Plaintiff has at least a reasonable likelihood of success on the merits; and (4) whether the granting of a preliminary injunction will disserve the public interest. Winter v. NRDC, Inc., 555 U.S. 7, 20 (U.S. 2008)[7] See also eBay, Inc. v. MercExchange, LLC, 547 U.S. 388 (2006)

**A.     Baseprotect is likely to succeed on the merits of its copyright infringement            claims.**

Baseprotect is likely to succeed on the merits of the claims underlying this application.  In order to establish copyright infringement, a plaintiff need only prove two elements: (1) existence of a valid copyright; and (2) copying of the work by the Defendant.   Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991). Distribution of a work on a P2P network without the consent of the copyright holder violates the exclusive right of distribution.  See 17 U.S.C. § 106; Universal City Studios Productions LLP v. Bigwood, 441 F. Supp. 2d 185 (D. Me 2006).  See Gamma Audio & Video, Inc. v. Ean-Chea, 11 F.3d 1106, 1115 (1st Cir. 1995).

Movant's claim that the allegations in this matter are unsubstantiated is both incorrect and demonstrates a fundamental misunderstanding of the applicable principles of copyright law.   Very simply, copyright law protects the copyright holder from distributing a work without the holder's permission.   Defendants were observed and documented distributing the work on the Internet.   The Movant was documented distributing the work from an Internet service account within his custody and control. Not only is the viral distribution of pirated copies of movies the aspect that is most

---

[7]    "A Plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of

damaging to copyrightholders, it is *clear* infringement.   "A plaintiff claiming infringement of the exclusive-distribution right can establish infringement by proof of actual distribution or by proof of offers to distribute, that is, proof that the defendant "made available" the copyrighted work."  <u>Motown Record Co. v. DePietro</u>, 2007 U.S. Dist. LEXIS 11626 (E.D. Pa. Feb. 16, 2007).

Moreover, given that the essential purpose of a Swarm is to further the distribution of a file – in this case a pirated copy of a copyrighted work – this Court can and should preliminarily enjoin the Swarm from its continued inducement of infringement.  "One infringes contributorily by intentionally inducing or encouraging direct infringement … Although "[t]he Copyright Act does not expressly render anyone liable for infringement committed by another," Sony Corp. v. Universal City Studios, 464 U.S., at 434, 78 L. Ed. 2d 574, 104 S. Ct. 774 these doctrines of secondary liability emerged from common law principles and are well established in the law." <u>MGM Studios Inc. v. Grokster</u>, Ltd., 545 U.S. 913, 930-931 (U.S. 2005).

The work at issue in this case is the subject of a valid international copyright entitled to protection under the Berne Convention, <u>see</u> 17 U.S.C. § 411.  It is also the subject of a valid registration in the United States.  Baseprotect is the exclusive holder of the right to distribute infringed by defendants and at no time has it authorized any of the Defendants distribute the work.

Baseprotect can conclusively establish the offering for distribution and distribution of a pirate copy by each of the Defendants.  Baseprotect has documented the

_____

preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. <u>Winter v. NRDC, Inc.</u>, 555 U.S. 7, 20 (U.S. 2008)

existence of Swarm 06159 and the fact that the Swarm is distributing the unique copy of

the work identified by hash 06159132D21BBC88ED40B6E51278879F2725243F.

(Farris Decl. ¶ 26.) Baseprotect documented the IP address from which each Defendant

was distributing the work, the date and time of distribution, and has, in fact, downloaded

a portion of the file from the subject IP address.  This downloading process conclusively

establishes that an unauthorized copy has been made and is stored on a computer

connected to the Internet through that account and that the pirated copy is, in fact, being

distributed through that account.

      The evidence of unauthorized distribution is overwhelming.  Plaintiff has a strong

likelihood of success on the merits.

> **B.**      **Baseprotect stands to suffer irreparable harm if not granted an injunction to preserve evidence and disclose the Doe Defendants' true identities.**

      Courts have not hesitated to grant equitable relief to enjoin unauthorized

distribution of copyrighted works.   In granting a permanent injunction prohibiting

Defendant from distribution on a P2P network, the court in <u>Universal City Studios</u>, 441

F. Supp. at 188, described the effect of unauthorized distribution as follows:

> Once a motion picture has been transformed into an unsecured digital
> format, it can be copied further and distributed an unlimited number of
> times over the Internet without significant degradation in picture or sound
> quality. … "Peer-to-Peer" ("P2P") networks have made it possible for
> millions of users to unlawfully obtain – and distribute for free –
> unauthorized digital copies of motion pictures that Plaintiffs spend
> millions of dollars to create."

<u>See also</u> <u>Taylor Co. v. Four Seasons Greetings, LLC</u>, 403 F.3d 958, 968 (8th Cir. 2005)

(Injunctions regularly are issued pursuant to the mandate of Section 502 because the

public interest is the interest in upholding copyright protections.) (granting permanent

injunction); <u>Lava Records, LLC v. Ates</u>, Civil Action No.: 05-1314, 2006 U.S. Dist. Lexis 46683 (D. La. July 11, 2006)(granting permanent injunction); <u>Capital Records v. Thomas-Rasset</u>, 480 F. Supp. 1045,. 1053 (D. Minn. 2010) ("the fact that Plaintiff's recordings can be replicated into infinity, for free, establishes that a distinct hardship rests with Plaintiffs") (granting permanent injunction.)

Unless enjoined, the Defendants will continue to distribute the work (in direct competition with Century Media.)  The "viral aspect" of a P2P networks means that literally a single copy can be copied infinitely.  Similarly, the identities of those to whom the work is distributed can only be determined through litigation and additional cost and expense.  Second, the evidence of the Doe Defendants' identities and the infringement is transitory and easily lost or destroyed.  Many Defendants will have no idea that they are under an obligation to retain such evidence or worse, may destroy such evidence in an attempt to avoid liability.

**C.     The Doe Defendants will not be unduly harmed by this Court's granting of a preliminary injunction.**

Defendants have no protectable interest that would be infringed by the relief sought.  "There is no cognizable harm to Defendant from being enjoined from doing something that is against the law and for which she has already been found liable." <u>Capital Record</u>, 480 F. Supp. at 1060 (enjoining unlawful distribution on the Internet).  Similarly, the mere fact that the expedited discovery will result in the disclosure of personal identities is not an interest that would prevent entry of the relief requested.  Defendants have no legitimate expectation of privacy in the subscriber information that they voluntarily provided to the ISP.  <u>See Interscope Records v. Does 1-14</u>, 558 F.Supp.2d 1176, 1178 (D. Kan. 2008) (a person using the Internet to distribute or

download copyrighted music without authorization is not entitled to have their identity protected from disclosure under the First Amendment); Guest v. Leis, 255 F.3d 325, 336 (6th Cir. 2001) ("computer users do not have a legitimate expectation of privacy in their subscriber information because they have conveyed it to another person—the system operator"); Sony Music Entertainment, Inc. v. Does 1-40, 326 F.Supp.2d 556, 566 (S.D.N.Y. 2004) ("Defendants have little expectation of privacy in downloading and distributing copyrighted songs without permission."); Arista Records, LLC v. Does No. 1, 254 F.R.D. 480, 481 (E.D.N.C. 2008).  The Doe Defendants are pseudonymous, not anonymous and the ISPs can readily identify each Doe Defendant.  (Farris Decl. ¶ 10.) By entering into a service agreement, Defendants knowingly volunteered personal information to the ISP.  Consequently, Century Media should be permitted to obtain the Doe Defendants' identities, as these Defendants have no legitimate expectation of privacy in this information.

> **D.** **The public interest in preserving the rights of copyright owners favors such relief.**

The United States has, throughout its entire history, protected the rights of copyright owners.  Eldred v. Ashcroft, 537 U.S. 186 (2003).  Additionally, Congress's continual protection of the rights of copyright owners has extended to owners of foreign works through the United States becoming a party to the Berne Convention.  Golan v. Holder, 132 S. Ct. 873 (2012).  The Third Circuit has also specifically recognized the public interest in preserving the rights of copyright owners.  Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 342 F.3d 191, 204 (3d Cir. 2003) ("Put simply, our Constitution emphasizes the purpose and value of copyrights and patents. Harm caused by their misuse undermines their usefulness."); UMG Recordings, Inc. v. Blake, 2007

U.S. Dist. LEXIS 46414 (E.D.N.C. June 26, 2007) ("there is a substantial public interest in preserving a copyright holder's exclusive rights and no public interest will be disserved by enjoining Defendant from continuing this activity. A permanent injunction is warranted under these circumstances."). Ultimately, the long history of copyrights affirmed by Congress, the Supreme Court, and the Third Circuit demonstrates the public interest in the value of copyright protection. This public interest far outweighs the Doe Defendants' interest in unauthorized distribution and avoidance of litigation.

## IV.    The Court can protect the interest of all Defendants through case management techniques.

Joinder of the defendants is well-recognized as the appropriate means of adjudicating a multi-party dispute.[8] Plaintiffs seeking recovery against large numbers of Defendants in torrent litigation face a difficult logistical task. Once a court approves expedited discovery, subpoenas must be issued to multiple ISPs in the multiple jurisdictions where the ISPs are located, which, in turn must notify each subscriber prior to the release of personally identifiable information. ISPs in some instances will take months to compile and release the information. Thus, not only can it take several months for a Plaintiff to research and build a case, it can also take several additional months

---

[8]      The jurisprudence in this area of the law is developing. While most courts have permitted joinder of the same members of swarm living in the same judicial district, there are other decisions that have refused to permit any joinder of defendants in torrent litigation. Those decisions in large part represent frustration over the litigation tactics of some attorneys and are not persuasive in that they have the effect of allowing unlawful conduct to continue without a remedy. More importantly, this case is not directed to the downloading of individual copies, but to the system of distribution. c.f., MGM Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 929-930 (U.S. 2005)("When a widely shared service or product is used to commit infringement, it may be impossible to enforce rights in the protected work effectively against all direct infringers, the only practical alternative being

before the identities of the Defendants are known.  Bringing individual suits against each Defendant, as Movant seems to suggest, would overwhelm all involved, the Courts and the litigants.

Movants seek to shift their share of responsibility to the other Defendants in the case, ignoring the fact that the distribution of the work constitutes a serious violation of copyright law and that it would require literally dozens of lawsuits in multiple jurisdictions.  The multiplicity of identical claims, the likelihood of inconsistent factual or legal findings, the inability of the remaining Defendants to pursue contribution claims, and the added cost and burden on the judicial system and the parties all counsel against proceeding with multiple lawsuits.

This Court can afford appropriate relief under the Copyright Act and also afford substantive due process to all Defendants, as well as complying with the requirement of Fed R. Civ. P. 65.  It is important to note that Baseprotect is not seeking *ex parte* relief. Baseprotect seeks a preliminary injunction within the scope of Fed. R. Civ. P. 65(d)(2) against only the Defendant identified by IP address 24.189.193.55 and the Swarm itself.

The proposed form of Order further requires that Plaintiff amend its complaint at least 10 days prior to the return date of the Order to Show Cause and make Service of the application papers as it learns the identities of the Doe Defendants.   Because subsequently joined Defendants arguably have an interest in the application (pursuant to Fed. R. Civ. P. 35(d)(2)(c) such an injunctions binds persons "in active concert or participation" with the enjoined party), the proposed Order to Show Cause provides for

_____

to go against the distributor of the copying device for secondary liability on a theory of contributory or vicarious infringement."

the publication of this application and any Orders entered in connection with this application on the document sharing site www.scribd.com.  The proposed Order further provides that any Defendant who subsequently receives actual notice of the preliminary injunction shall be afforded an opportunity to move the Court for relief from the preliminary injunction.

**V.     An Injunction Bond of $1,500 is adequate to protect Defendants' interests.**

This Court has jurisdiction to determine the appropriate amount of an injunction bond or, when appropriate, to dispense with the requirement altogether.  No seizure of property is affected by the preliminary injunction, nor is any lawful activity sought to be restrained.  Defendants at most would be prevented from using existing copies as they wish, or distributing the work further.  See UMG Recordings, Inc. v. Blake, 2007 U.S. Dist. LEXIS 46414 (E.D.N.C. June 26, 2007). ("Defendant … faces little, if any, harm. These recordings will still be just as accessible to Defendant; (s)he will have to pay for them.")  A bond in the amount of $1,500 provides sufficient protection to the Defendants.

**CONCLUSION**

For all of the foregoing reasons, Century Media respectfully requests that this Court grant the within application.  Defendants should be enjoined from further unauthorized distribution of the movie *Weekend* and from deleting discoverable evidence.  Plaintiff's request for expedited discovery should be granted as a necessary element of Plaintiff's right to pursue the remedies requested in the Complaint.


DATED:  June 4, 2012                              **THE MCDANIEL LAW FIRM, PC**


                                        By:  _____
                                             Jay R. McDaniel, Esq.
                                             *Attorneys for Plaintiff*
                                             *Baseprotect USA, Inc.*